IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CR-75-D-4

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DESHAUN ENTREA SPRUILL, | ) | |
| | ) | |
| Defendant. | ) | |

On June 17, 2021, Deshaun Entrea Spruill ("Spruill" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 473]. On June 29, 2021, Spruill filed a second, identical pro se motion for compassionate release [D.E. 477]. On December 14, 2021, Spruill, through counsel, filed a third motion for compassionate release [D.E. 490], along with documents in support [D.E. 491]. On December 28, 2021, the government responded in opposition [D.E. 494] and filed documents in support [D.E. 495]. On March 28, 2022, Spruill filed a letter concerning his motions for compassionate release [D.E. 501]. As explained below, the court denies Spruill's motions.

I.

In 2011 and 2012, Spruill and a robbery crew perpetrated eleven armed robberies of fast food restaurants that terrorized Eastern North Carolina. See PSR [D.E. 253] ¶¶ 15–20. On November 1, 2013, pursuant to a written plea agreement and waiver of indictment, Spruill pleaded guilty to two counts of using and carrying a firearm during and in relation to a crime of violence and aiding and abetting. See [D.E. 214, 216, 217, 218]. Pursuant to the plea agreement, the government agreed to

dismiss at sentencing the original and superseding indictments, including eleven counts of Hobbs Act robbery and aiding and abetting, and nine counts of brandishing a firearm during and in relation to a crime of violence and aiding and abetting. See [D.E. 132]; Plea Agr. [D.E. 218] ¶ 4(a).

On February 11, 2014, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); [D.E. 255, 262]; PSR; Sent. Tr. [D.E. 290] 6–7. The court calculated Spruill's advisory guideline range to be 60 months' imprisonment on count one and 300 months' consecutive imprisonment on count two. See Sent. Tr. at 6–7. Taking into account dismissed conduct, the court upwardly departed under U.S.S.G. § 5K2.21. See Sent. Tr. at 17–18. With the upward departure and after considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Spruill to 96 months' imprisonment on count one and 300 months' consecutive imprisonment on count two, for a total term of 396 months' imprisonment. See id. at 17–22; [D.E. 255, 262]. Spruill appealed. See [D.E. 275]. On October 22, 2015, the United States Court of Appeals for the Fourth Circuit affirmed Spruill's sentence. See United States v. Gibson, 636 F. App'x 134, 138–39 (4th Cir. 2015) (unpublished); [D.E. 336, 337, 338].

II.

On December 21, 2018, the First Step Act took effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

2

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1.  Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

       (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation

---

      (ii) The defendant is—

          (I) suffering from a serious physical or medical condition,

          (II) suffering from a serious functional or cognitive impairment, or

          (III) experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "§ 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., United States v. Hargrove, 30 F.4th 189, 194–95, 198–200 (4th Cir. 2022); McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In his motions for compassionate release, Spruill claims he has satisfied the exhaustion requirement. See [D.E. 490] 2–3. The government agrees that Spruill has satisfied the exhaustion requirement. See [D.E. 494] 4; cf. United States v. Muhammad, 16 F.4th 126, 130–31 (4th Cir. 2021). Accordingly, the court addresses Spruill's motions on the merits.

5

Spruill seeks compassionate release pursuant to section 3582(c)(1)(A) or release to home confinement under section 3582(c)(1)(A). In support, Spruill argues that his stacked section 924(c) convictions, his youth at the time of the offenses, his rehabilitative efforts, his release plan, his hypertension, his "bad heart," and the COVID-19 pandemic constitute extraordinary and compelling reasons warranting a sentence reduction to time served. See [D.E. 473, 490, 501].

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Spruill argues that his hypertension and "bad heart" place him at heightened risk of serious infection from COVID-19. See [D.E. 473] 2, 10; [D.E. 490] 1, 3–6; [D.E. 491] 1. Beyond generalized arguments about the spread of COVID-19 within the BOP generally and Spruill's facility of incarceration specifically, Spruill does not argue he is unable to manage his health conditions while incarcerated or that the BOP is not treating his health conditions.

Spruill has declined to receive a COVID-19 vaccine. See [D.E. 494-2]. Spruill has not disclosed to the court any religious or medical reason why he cannot receive a COVID-19 vaccine. "[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see, e.g., United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished) ("District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release."); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022)

(unpublished) ("But these [health] risks can be significantly ameliorated by vaccination, and the district court correctly explained that defendants may not perpetuate their own extraordinary and compelling circumstances for compassionate release by declining the Bureau of Prison's attempt to protect them." (cleaned up)); United States v. Church, No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) (per curiam) (unpublished) ("We agree that [defendant's] unexplained refusal to accept a COVID-19 vaccination when offered negates his otherwise compelling medical reasons for release" (cleaned up)); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), petition for cert. filed, No. 21-6594 (U.S. Dec. 15, 2021); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate refusing a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished); United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Accordingly, reducing Spruill's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

Spruill also argues that the First Step Act's changes to sentencing for section 924(c) convictions constitutes an extraordinary and compelling reason to reduce his sentence. See [D.E. 473] 8–10; [D.E. 490] 6–10. When the court sentenced Spruill on February 11, 2014, section 924(c) required a 60-month mandatory minimum sentence for using and carrying a firearm during and in relation to a crime of violence and a 300-month mandatory minimum consecutive sentence for every subsequent conviction of the same offense. See McCoy, 981 F.3d at 275. A section 924(c) conviction was a subsequent conviction even if a defendant obtained the first section 924(c)

7

conviction in the same case. See id. Spruill pleaded guilty to two counts of using and carrying a firearm during and in relation to a crime of violence, triggering the 300-month mandatory minimum consecutive sentence on count two. See Sent. Tr. at 6–7.

In the First Step Act, Congress changed the law so that a section 924(c) conviction is only a subsequent conviction if the first section 924(c) conviction "arises from a separate case and already has become final." McCoy, 981 F.3d at 275 (quotation omitted). Thus, section 924(c)(1)(C)(i) "no longer applies to multiple § 924(c) convictions obtained in a single prosecution." United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020); see McCoy, 981 F.3d at 275. Section 403(b) of the First Step Act applies this change to section 924(c) "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. at 5222. The court, however, sentenced Spruill in 2014, long before Congress enacted the First Step Act. Nonetheless, stacked sentences under section 924(c) may form the basis for a successful motion under section 3582(c)(1)(A). See McCoy, 981 F.3d at 284–86.

The court assumes without deciding the First Step Act's non-retroactive changes to 924(c), the COVID-19 pandemic, Spruill's medical conditions, his rehabilitative efforts, and his release plan constitute "extraordinary and compelling" reasons. Cf. McCoy, 981 F.3d at 284–86; United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the wide availability of COVID-19 vaccines presents an opportunity for Spruill to diminish his risk of serious infection from COVID-19. See Thomas, 2022 WL 296594, at *2; Kennedy, 2022 WL 43187, at *2. Any further risk is self-

incurred. See Broadfield, 5 F.4th at 803. Regardless, as explained below, the section 3553(a) factors counsel against reducing Spruill's sentence.

The section 3553(a) factors include the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). Spruill is 29 years old and pleaded guilty to two counts of using and carrying a firearm during and in relation to a crime of violence and aiding and abetting (counts one and two of the superseding criminal information). See PSR ¶¶ 1–14. Spruill and his co-defendants terrorized several Eastern North Carolina communities, committing eleven armed robberies of fast food restaurants over a five-month period in 2011 and 2012. See id. ¶¶ 15–20; Sent. Tr. at 15–22. Spruill has made some positive efforts while federally incarcerated. He has taken BOP courses and programs. See [D.E. 473] 10–11. However, he also has disciplinary infractions for mail abuse, fighting, possessing an unauthorized item, possessing a hazardous tool, and two infractions for disruptive conduct. See [D.E. 494-3].

In ensuring that the sentence promotes respect for the law and imposes just punishment, the court also may consider that Spruill's sentence resulted from a carefully crafted plea agreement. See 18 U.S.C. § 3553(a)(2)(A). Under the plea agreement, Spruill agreed to plead guilty to two section 924(c) counts. In exchange, the government agreed to dismiss at sentencing eleven counts of Hobbs Act robbery and aiding and abetting and nine other section 924(c) counts. See [D.E. 132]; Plea Agr. ¶ 4(a). Had Spruill been convicted of all of the counts on which he was indicted, he would have faced over 3,000 months in prison. See PSR ¶ 42. When it sentenced Spruill, the court emphasized the need to account for the impact on the victims, to incapacitate Spruill, and to promote respect for the law. See Sent. Tr. at 15–22. In order to account for the dismissed conduct, the court upwardly departed. See id. at 15–18.

9

The court must balance Spruill's positive efforts while federally incarcerated with his incredibly serious criminal conduct, the original upward departure, his serious misconduct in federal custody, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered the COVID-19 pandemic, changes in the law and the advisory guideline range under U.S.S.G. § 2K2.4, Spruill's rehabilitative efforts, and Spruill's release plan. Spruill's release plan includes living with his supportive mother and working with her at the convenience store she manages. See [D.E. 473] 10; [D.E. 490] 13. Having considered the entire record, the section 3553(a) factors, Spruill's arguments, the government's persuasive response, the need to punish Spruill for his serious criminal conduct, to incapacitate Spruill, to promote respect for the law, to deter others, and to protect society, the court denies Spruill's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Spruill's request for home confinement, see [D.E. 490] 11, Spruill seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Simon, No. 20-6701, 2022 WL 337126, at *1 (4th Cir. Feb. 4, 2022) (per curiam) (unpublished); United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021); United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General

and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Spruill requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Spruill's request for home confinement.

III.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 473, 477, 490], and DISMISSES defendant's request for home confinement.

SO ORDERED. This 12 day of May, 2022.

JAMES C. DEVER III
United States District Judge